**RESORT DEVELOPMENT INTERNATIONAL, INC.,**
Plaintiff,

v.

**CITY OF PANAMA CITY BEACH, Defendant.**

No. MCA 85–1061–RV.

United States District Court,
N.D. Florida,
Panama City Division.

May 1, 1986.

Jacalyn N. Kolk and Stephen D. Barron, Hilton, Cleavinger, Barron, Hilton, Kolk & Laing, Panama City, Fla., for plaintiff.

Douglas J. Sale, Panama City, Fla., for defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

VINSON, District Judge.

The defendant, City of Panama City Beach ("City"), has filed a motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure. (Doc. 28) Finding no dispute as to any material fact, I conclude that the defendant is entitled to judgment as a matter of law. Defendant's motion, therefore, is GRANTED.

## I. FACTUAL BACKGROUND.

Resort Development International, Inc. ("RDI") operates timeshare resorts within the City of Panama City Beach. A substantial amount of RDI's marketing consists of off-premises, personal contact with prospective customers initiated by its employees. Much of RDI's peripatetic solicitation occurs on the City's sand beach areas located along the Gulf of Mexico. According to the complaint, this marketing technique "has been highly successful to [RDI] and has produced the majority of [RDI's] sales." *Complaint,* ¶ 10. In fact, Kenn R. Keim, President of RDI, stated that the "substantial number of employees who solicit and canvass the sand beach area for the purpose of introducing potential customers to the purchase of timeshare condominiums ... [is integral to] the major portion of RDI's sales." *Affidavit of Kenn R. Keim,* doc. 7, at 2.

Finding that peripatetic solicitation on the beach constituted a nuisance, and in an effort to regulate commercial solicitation along its sand beaches, the City adopted Ordinance No. 297[1] on May 23, 1985, which, before it was amended on December 12, 1985, stated in part:

No person shall solicit or canvass for the sale or rental of merchandise, services, goods, or property of any kind oi character, in, upon, or from the sand beach areas between the waters of the Gulf of Mexico and the Coastal Line established by the State of Florida, Department of Natural Resources.

Section 1 of Ordinance No. 297 further defines "solicit or canvass" to mean:

any act, delivery or exchange not initiated by the prospective customer, which directs attention to any business, mercantile or commercial establishment, or any other commercial activity, for the purpose of directly or indirectly promoting commercial interests through sales, rentals or any exchanges of value.

Before its amendment on December 12, 1985, the prohibitions found in Section 1 of the ordinance did not apply to persons soliciting or canvassing from a booth or stall. "Booth or stall" is defined as "an immobile structure or partial enclosure not exceeding fifty (50) square feet of gross horizontal space." Additionally, the ordinance completely exempted from its booth requirement the canvassing and solicitation for the sale or rental of certain products such as umbrellas, sale boats, jet skis, floats, chairs, suntan lotions, and the like, on the basis that those products "directly serve a public need in the sand beach areas and are not themselves a nuisance or detriment." Finally, Section 5 of the ordinance states that any person violating the ordinance shall be guilty of an offense punishable as provided by law.

One day after the City adopted Ordinance No. 297, RDI filed a complaint in this Court seeking injunctive and declaratory relief, as well as damages and attorney's fees. Briefly, the complaint alleges that the ordinance, as applied to RDI, impermissibly infringes upon RDI's First Amendment right to freedom of speech. The complaint also asserts a challenge to Ordinance No. 297 based on the equal protection clause of the Fourteenth Amendment.

On May 30, 1985, I entered an order enjoining the City from enforcing Ordinance No. 297 against RDI, pending a decision on the merits of this case. Shortly thereafter, the City moved for judgment on the pleadings, pursuant to Rule 12(c), Federal Rules of Civil Procedure. In its motion, the City argued (1) that under *Central Hudson Gas & Electric Corp. v. Public Services Commission,* 447 U.S. 557, 100 S.Ct. 2343, 69 L.Ed.2d 341 (1980), Ordinance No. 297 did not violate RDI's First Amendment rights, and (2) that the exemptions provided in the ordinance were not based on speech and rationally related to a legitimate state interest. RDI agreed that *Central Hudson, supra,* controlled, but ar-

---

1. The full text of Ordinance No. 297, as amended by Ordinance No. 299, appears in Appendix A, which is attached to this order.

gued that Ordinance No. 297 regulated more extensively than necessary to serve the City's governmental interests and that the ordinance was actually impermissible content regulation of speech associated only with the timeshare industry. In addition, RDI argued that the exemptions noted in the ordinance were totally arbitrary in that the products exempted failed to serve a public need any greater than the timeshare condominiums marketed by RDI.

On September 24, 1985, I entered an order denying the City's motion for judgment on the pleadings. Applying the four-part test articulated by the Supreme Court of the United States in *Central Hudson, supra,* I ruled that too many material facts remained in dispute to allow me to grant the City judgment as a matter of law. As indicated in that order, the parties agreed that peripatetic solicitation was a form of commercial speech protected by the First Amendment. Furthermore, the parties agreed that the City had a substantial governmental interest in preventing "unreasonable interference with the flow, recreation, enjoyment, and privacy of persons otherwise upon the sand beach areas." *Order,* September 24, 1985, at 4 n. 3. However, the unexplained presence of the listed exemptions in the ordinance and the City's inability on a motion for judgment on the pleadings to articulate some minimally reasonable distinction between exempted and prohibited solicitation both engendered difficulty with whether the ordinance directly advanced the governmental interest and whether the ordinance regulated too extensively. *Order,* September 24, 1985, at 4–5. *See Central Hudson, supra,* 447 U.S. at 566, 100 S.Ct. at 2351. Consequently, the City's motion was denied.

Apparently in reaction to language in my order of September 24, 1985, the City amended Ordinance No. 297 on December 12, 1985, by adopting Ordinance No. 299. Potentially the most significant change, and the one which is the primary subject of the City's present motion for summary judgment, is the requirement that any person soliciting or canvassing on the sand beach areas must do so from within a booth or stall, *including* soliciting and canvassing for those products previously exempted from the booth requirement. Otherwise, Ordinance No. 297 remains substantially intact.

The City now contends that the amendment eliminated any potential finding that the ordinance regulates commercial speech on the basis of content. Additionally, by eliminating the exemptions and confining all commercial solicitation and canvassing to booths or stalls, the City also asserts that Ordinance No. 297, as amended, fully complies with the equal protection clause.

## II. THE FIRST AMENDMENT CHALLENGE.

As with the City's earlier motion, both parties here agree that *Central Hudson, supra,* provides the controlling authority for determining whether RDI's commercial speech is unconstitutionally affected by Ordinance No. 297. A closer reading of that case, however, reveals that the facts of this case no longer fall squarely within the commercial speech test of *Central Hudson, supra.* The question presented in *Central Hudson, supra,* as stated by the Supreme Court in the opening paragraph of the opinion, was

> whether a regulation of the Public Service Commission of the State of New York violates the First and Fourteenth Amendments because it *completely bans* promotional advertising by an electrical utility. *Central Hudson, supra,* 447 U.S. at 558, 100 S.Ct. at 2347 (emphasis added).

In holding that the regulation was unconstitutional, the Court assayed earlier cases and enunciated a four-part test to be applied when governmental regulation infringes upon commercial speech. *See id.,* 447 U.S. at 566, 100 S.Ct. at 2351. However, as is clearly indicated by the Court's wording of the question presented, *Central Hudson* involved regulation of commercial speech based solely on its *content.* Content regulation, of course, has traditionally been more carefully scrutinized by courts

in light of the potential for abuse and discriminatory, legislative preferences. *See, e.g., Perry Educational Association v. Perry Local Educators Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (classifying types of public fora and placing restriction on content-based regulations).

On the other hand, a separate, though closely related, line of cases has developed involving judicial review of governmental efforts at regulating the time, place, and manner of speech where the regulations are based on criteria divorced from content. The courts have traditionally accorded such time, place, and manner regulations greater deference than with regulations of speech based on content. *Id.* 460 U.S. at 45, 103 S.Ct. at 954 (governmental interest justifying content regulation in traditional public forum must be "compelling," while government interest justifying time, place, and manner restriction need only be "significant"). *See also Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

While the previous existence of exemptions in Ordinance No. 297 raised issues regarding content regulation, the ordinance in its present form completely vitiates such an issue.[2] As a result, Ordinance No. 297, as amended, is purely a regulation of the place and manner of solicitation and canvassing on the City's beaches, the constitutionality of which must be measured according to the standards articulated by the Supreme Court in "time, place, and manner" cases. If the City's removal of the exemptions did nothing more, it certainly eliminated the need to analyze this case under *Central Hudson, supra.*[3]

### A. Time, place, and manner restrictions.

It is well-settled that all activities protected by the First Amendment, whether commercial or idealogical in nature, are subject to reasonable time, place, and manner restrictions. *Grayned v. City of Rockford, supra.* The constitutionality of a time, place, and manner restriction, in turn, depends on whether: (1) the regulation is justified without reference to the content of the regulated speech; (2) the regulation serves a significant governmental interest; and (3) in regulating the time, place, and manner of the speech, ample alternative channels are left open for communication

2. The possibility of content regulation was expressly noted in my order of September 24, 1985, in view of the different treatment accorded to the solicitation of timeshares and other products and services such as cabanas, umbrellas, and floats. "Factual development [regarding the justification for the exemptions] is essential to detecting a potential, albeit subtle, content distinction that would be constitutionally impermissible." *Order,* September 24, 1985, at 5.

3. I recognize that the Supreme Court applied *Central Hudson, supra,* to an ordinance which regulated advertising on billboards, at least to the extent that the ordinance affected commercial speech. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507–12, 101 S.Ct. 2882, 2892–95, 69 L.Ed.2d 800 (1981). In addition, there is language in the plurality opinion in *Metromedia* which implicitly indicates that the four-part test of *Central Hudson* is applicable irrespective of whether the regulation is either content-based or one which affects the time,

place, and manner of commercial speech. However, I am not persuaded that *Metromedia* mandates the use of *Central Hudson* to the exclusion of time, place, and manner decisions. To the contrary, the plurality in *Metromedia* employed the criteria articulated by *Central Hudson* because, as with the regulation in that case, the ordinance in *Metromedia* was content-based and was *not* a time, place, and manner restriction. As stated by the plurality: "[W]e reject appellee's suggestion that the ordinance may be appropriately characterized as a reasonable 'time, place, and manner' restriction.... Signs that are banned are banned *everywhere and at all times.*" *Metromedia, supra,* 453 U.S. at 515–16, 101 S.Ct. at 2896–97 (emphasis added). In this case, RDI's commercial solicitation is not banned "everywhere and at all times" along the City's beaches. Only the place and manner of RDI's commercial speech is regulated. Accordingly, I conclude that "time, place and manner" decisions are more appropriately suited to my analysis of Ordinance No. 297, as amended.

of the information. *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 648, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981); *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 535, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, supra,* 425 U.S. at 771, 96 S.Ct. at 1830. In addition, when applying these three standards, "consideration of a forum's special attributes is relevant to the constitutionality of [the] regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular form involved." *Heffron, supra,* 452 U.S. at 650–51, 101 S.Ct. at 2565; *Perry Educational Association v. Perry Local Educators Association, supra,* 460 U.S. at 44, 103 S.Ct. at 954.

In order to determine whether Ordinance No. 297, as amended, constitutes a valid time, place, and manner regulation, I must measure the ordinance against the established criteria as set forth above.

■ (1) *Is the ordinance content-neutral?* Any time, place, and manner restriction placed on RDI's commercial speech must not be based upon either the content or the subject matter of the speech. *See Consolidated Edison Co. v. Public Service Commission, supra,* 447 U.S. at 536, 100 S.Ct. at 2332. Prior to the amendment of Ordinance No. 297, a persuasive argument could have been made that, by exempting solicitation of certain products from its booth requirement, the ordinance actually made a veiled, somewhat subtle, attempt at regulating commercial speech based on its content. As amended, however, the ordinance draws no distinction among products or services, but confines any and all solicitation and canvassing for the sale or rental of such products or services to booths or stalls. Clearly, then, while the ordinance is directed only toward commercial speech, it does not discriminate among such speech through exceptions or exemptions. Instead, the ordinance applies evenhandedly to anyone wishing to solicit or canvass along the City's sand beaches.[4]

In addition, Ordinance No. 297, as amended, does not "suffer from the more covert forms of discrimination that may result when arbitrary discretion is vested in some government authority." *Heffron, supra,* 452 U.S. at 649, 101 S.Ct. at 2565. The ordinance is essentially self-enacting; if any purveyor of goods or services decides to conduct sales or rentals along the City's beaches, he or she need only construct a booth or stall, or establish an area of the beach that falls within the ordinance's definition of booth or stall, in order to do so. No discretion is given to a public official with respect to permission to solicit or canvass. Consequently, I find that the ordinance is, in fact, content-neutral.

(2) *Does the ordinance serve a significant governmental interest?* As indicated in my order denying the City's motion for judgment on the pleadings, RDI concedes that the City's interest in protecting its beaches from nuisances and in prohibiting unreasonable interferences with the "flow, recreation, enjoyment, and privacy of persons ... on the sand beach areas" [*Order,* September 24, 1985, at 4 n. 3] is significant.

---

**4.** During the pre-trial conference held on April 25, 1986, the defendant expressed the view that time, place, and manner decisions might not apply to this case. Specifically, the City was concerned that, because Ordinance No. 297, as amended, deals with only commercial speech, it is not content neutral and fails to meet the first criterion necessary for upholding its constitutionality. While this position might be technically viable, it belies the distinctions between commercial speech and non-commercial speech that have been clearly noted by the Supreme Court. *See, e.g., Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918–

19, 56 L.Ed.2d 444 (1978). Consequently, the mere fact that a regulation affects commercial speech only, rather than all speech, is not itself violative of the requirement that the regulation be content neutral. Once a governmental entity chooses to regulate within the general spectrum of speech defined as commercial, content neutrality is preserved as long as the entity does not further differentiate or discriminate within that spectrum. As amended, Ordinance No. 297 does not further differentiate or discriminate among forms of regulated commercial solicitation and, therefore, is content neutral.

However, RDI strongly refutes the City's finding that commercial solicitation along the beaches constitutes the nuisance toward which the ordinance is directed.[5] In essence, RDI argues that the ordinance fails to "serve" the admittedly significant governmental interest of insuring tranquility on the beaches, in that it prohibits an activity (peripatetic solicitation) that does not actually affect the tranquility of the beaches. Moreover, RDI argues that summary judgment would be manifestly inappropriate without demonstrable evidence that peripatetic solicitation is, in fact, a nuisance. Because RDI's argument raises compelling questions involving the appropriate role of a federal court in reviewing local government's attempts to regulate commercial speech, this issue warrants close analysis.

In support of its position, RDI cites *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Specifically, RDI seizes upon the following language of that opinion in its argument that the City must demonstrate that a nuisance actually exists or that peripatetic commercial solicitation actually invades beachgoers' privacy interests in an intolerable manner:

> The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a *showing that substantial privacy interests are being invaded in an essentially intolerable manner*. *Cohen v. California, supra*, 403 U.S. at 21, 91 S.Ct. at 1786 (emphasis added).

Without such a demonstration by the City in this case, RDI asserts that a genuine of fact exists precluding summary judgment—*i.e.*, whether RDI's marketing technique actually invades a substantial privacy interest in an intolerable manner.

For a number of reasons, I find RDI's argument untenable. First, the portion of the *Cohen* opinion upon which RDI relies is, by its own language, inapplicable to the facts of this case, for the City here does not seek "to *shut off* discourse solely to protect others from hearing it." *Id.*, 403 U.S. at 21, 91 S.Ct. at 1786 (emphasis added). Quite to the contrary, the City seeks only to regulate the place and the manner of RDI's commercial speech, and such regulations have traditionally been scrutinized less closely by the courts. *See, e.g., Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

Second, *Cohen*, and other cases citing the passage set out above, involved content-based regulation of speech that was ideological, political, or artistic in nature. *See, e.g., Consolidated Edison Co. v. Public Service Commission, supra*, (regulation completely banned utility company from including in its monthly electric bills inserts addressing controversial issues of public policy); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (ordinance prohibited showing films containing nudity at outdoor movie theater when screen visible from public street or place). As noted earlier, speech regulations based on content must be scrutinized more carefully than regulations solely involving the time, place, and manner of the speech. Furthermore, it is now well-settled that non-commercial speech enjoys greater constitutional protection than commercial speech. *Central Hudson, supra*, 447 U.S. at 562–63, 100 S.Ct. at 2349–50.

■ Because this case involves only a restriction on the place and manner of purely commercial speech, I conclude that the more rigorous requirement articulated in *Cohen* upon which RDI relies is inappropriate here. By requiring that time, place, and manner restrictions be content-neutral, serve a significant governmental interest, and leave open ample alternative channels, the Supreme Court has provided the means for balancing the respective interests of the government and the individual in this context. To require the City to demonstrate further that each particular form of commercial solicitation which it seeks to regu-

---

5. The first paragraph of the ordinance's preamble indicates that "commercial solicitation along the sand beach areas ... has become a nuisance."

late *actually* constitutes a nuisance before it is permitted to generally regulate in this area would be to approach the level of judicial scrutiny under the First Amendment that is reserved only to government regulations based on content and infringing on ideological or political speech. Additionally, to subject time, place, and manner restrictions on commercial speech to the heightened level of scrutiny evoked by *Cohen, supra,* would be to ignore "the 'common-sense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to governmental regulation, and other varieties of speech." *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918–19, 56 L.Ed.2d 444 (1978).

■ Finally (and perhaps the most compelling reason for declining to apply *Cohen* to time, place, and manner restrictions on commercial speech), the role of the federal courts in scrutinizing governmental regulation of commercial speech aimed at insuring the general welfare is a limited one. *See Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Harnish v. Manatee County,* 783 F.2d 1535, 1539 (11th Cir.1986) ("governmental entity charged with the responsibility of protecting the environment must be given discretion in determining how much protection is necessary and the best method of achieving that protection." *Id.).* In fact, the principle of judicial deference to legislative choices in the area of time, place, and manner regulation is the ultimate basis for the more relaxed standards against which such regulations are measured. If the federal courts were to re-

quire greater justification on the part of local and state governments, our federalism would inevitably erode. As the Supreme Court stated through Justice Black in *Ferguson v. Skrupa,* 372 U.S. 726, 731, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963), "[w]e refuse to sit as a 'superlegislature to weigh the wisdom of legislation'...." *Id.* (quoting *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952). In view of the significant governmental interest articulated by the City in this case, and because Ordinance No. 297, as amended, regulates only the time, place, and manner of RDI's purely commercial speech, I, too, refuse to sit as a "superlegislature" by requiring demonstrable evidence that RDI's marketing technique is actually a nuisance.

■ To summarize, there is no dispute in this case that the City has a significant governmental interest in regulating nuisances that occur on its beaches. RDI readily concedes that this interest exists. In addition, the City does not contend that every form of commercial solicitation will, in practice, actually result in a nuisance to every person who seeks to use the City's beaches. However, because Ordinance No. 297, as amended, does not regulate on the basis of content, because there is no viable equal protection issue present, and because the ordinance affects purely commercial speech, judicial deference to legislative enactments under these facts precludes me from inquiring whether RDI's particular form of commercial solicitation actually constitutes a nuisance. The need for such an inquiry is not supported by the applicable case law; and, more importantly, such an inquiry would reflect unsound policy.[6]

---

**6.** Consequently, I need not consider the affidavit of Keith Hodges, Sales Manager, (doc. 39) submitted by RDI. Mr. Hodges' affidavit states that RDI's peripatetic solicitation is not, in fact, a nuisance, and that RDI's employees are instructed to act politely and to terminate their efforts at solicitation whenever a potential customer expresses no desire to communicate with the employee. I assume that both sides can produce long lines of witnesses who will either agree or disagree on this. In fact, at the pre-trial conference, the attorneys have indicated that most of the trial witnesses will be offered for that exact purpose. Under the circumstances of this case, and in light of the matters discussed above, evidence submitted either in support of or in opposition to that determination is not material or relevant to the constitutionality of the ordinance.

(3) *Are ample alternative channels left open for communication of RDI's commercial speech?* The final criterion against which amended Ordinance No. 297 must be measured is whether alternatives exist for the expression of RDI's speech despite the effects of the ordinance. Without doubt, this question must be answered in the affirmative.

First, the ordinance does not deny RDI access to potential customers along the City's beaches. While the manner of RDI's peripatetic solicitation is somewhat limited by confining its activities to a booth or stall, the ordinance defines "booth or stall" to permit a great deal of mobility and opportunity to attract the attention of interested beachgoers. In fact, once an RDI employee attracts a potential customer's attention from within the booth, and the customer demonstrates further interest in RDI's product, the ordinance would not then prohibit the employee from leaving the booth or stall to cultivate that listener's interest. *See Defendant's Brief in Support of Motion for Judgment on the Pleadings,* doc. 15, at 14.

Second, the ordinance does not prohibit RDI from soliciting or canvassing from any other location not falling within the definition of "sand beach areas" found in the ordinance. And third, the ordinance does not prohibit RDI from erecting signs and other devices that would attract the attention of potential customers on the beach. RDI's ability to formulate techniques necessary to attract customer attention from within the booth is generally admitted by Christine Madeo, RDI's manager of "off-premises contact," who supervises the twenty to thirty individuals responsible for peripatetic solicitation. *Madeo deposition,* doc. 31–C, at 26.

Therefore, I find that the ordinance does not deny RDI ample alternative channels for expression of commercial speech. The First Amendment protects the right of every citizen to "reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Kovacks v. Cooper, supra,* 336 U.S. at 87, 69 S.Ct. at

454. Ordinance No. 297, as amended, provides RDI with such an opportunity by requiring its solicitation or canvassing to be restricted to booths or stalls.

The final issue I must address involves the applicability of "less restrictive means" analysis to the facts of this case. When governmental regulations affect commercial or non-commercial speech, and those regulations are based on content, the Supreme Court has upheld the constitutionality of those regulations only when they are necessary to further the state's interest. *See, e.g., Central Hudson, supra,* 447 U.S. at 566, 569–70, 100 S.Ct. at 2351, 2353–54; *Shelton v. Tucker,* 364 U.S. 479, 490, 81 S.Ct. 247, 253, 5 L.Ed.2d 231 (1960). In other words, content-based regulations are impermissible if the governmental interest could be advanced through the use of less restrictive or drastic means.

Less restrictive means analysis clearly comports with the heightened scrutiny that courts undertake when reviewing content-based regulations of speech. However, when government regulates only the time, place, and manner of speech, and particularly when that speech is purely commercial and applied evenly, an inquiry into less drastic means is apparently inapplicable. However, in *Heffron, supra,* the case from which I have drawn the criteria for measuring time, place, and manner restrictions, the Supreme Court also made reference to the state court's finding that less restrictive means existed. *Id.,* 452 U.S. at 654, 101 S.Ct. at 2567. While the court rejected the state court's determination that less restrictive means in fact existed, a question is raised regarding the role of less restrictive means analysis in time, place, and manner decisions.

Further, in *Perry Educational Association, supra,* the Supreme Court held that the time, place, and manner regulations of ideological speech or political speech must be "narrowly tailored to serve a significant governmental interest," if such regulations affect speech in a traditional public forum. What the cases seem to support, then, is that an inquiry into less restrictive means

is appropriate (1) when regulations are content-based, or (2) when time, place, and manner regulations that are content-neutral affect non-commercial speech expressed in a forum traditionally reserved for such speech. *But see Harnish v. Manatee County, supra,* at 1539–40 (court should not speculate as to whether less restrictive means exist in commercial speech context once it finds that the means employed reasonably advance the governmental purpose). However, when governmental regulations affect merely the time, place, and manner of commercial speech, without reference to content, an analysis into the availability of less restrictive means seems inappropriate. That is, once a court determines that the regulation is content-neutral, that the governmental interest is significant, and that alternative channels are available for the plaintiff's communication, the time, place, and manner restriction is constitutional under the First Amendment.[7]

RDI contends that a number of less restrictive alternatives were available to the City in lieu of imposing the booth requirement. For example, RDI proposed a licensing scheme whereby businesses wishing to solicit on the City's beaches would pay a fee, and solicitors would be limited in number according to the amount of apartment or condominium units in the hotel or time-share resort. However, whether I would find this alternative to be preferable to confining RDI's solicitation to booths or stalls is immaterial under the analysis discussed earlier. Once I have determined that reasonable, alternative channels exist through which RDI may convey its commercial message, I need not "speculate as to whether less restrictive means exist," *Harnish v. Manatee County, supra,* at 1540, for the minimal intrusion on RDI's speech satisfies the constitutional requisites imposed on time, place, and manner regulations, without more. I do note, how-

ever, that Ordinance No. 297, as amended, affects nothing more than RDI's purely commercial speech. In other words, RDI employees, and anyone else wishing to do so, are free to roam about the beach and say whatever they want, and as long as those individuals are not soliciting or canvassing as defined in Ordinance No. 279, their speech and speech-related activities are not restricted to booths or stalls. *See Heffron, supra,* 452 U.S. at 643, 101 S.Ct. at 2561 (ordinance restricting sales, distribution, and fund solicitation to booths at state fair did not prevent organizational representatives from walking about the fairgrounds and communicating the organization's views with the fair patrons in face-to-face discussions).

## III. THE EQUAL PROTECTION CHALLENGE.

■ In addition to its challenge under the First Amendment, RDI asserts that Ordinance No. 297 also violates the equal protection clause. Particularly, RDI contends that the exemptions provided by Ordinance No. 297 are arbitrary, and that the classifications drawn by the ordinance do not relate to any legitimate state interest. In addition, RDI alleges that the classifications drawn by Ordinance No. 297 infringe on RDI's fundamental right of freedom of commercial speech.

There is no doubt, and I so recognized in my order of September 24, 1983, that equal protection problems existed before the ordinance's amendment of December 12, 1985. However, as is made clear by the previous discussion, the ordinance no longer contains any exemptions from the booth requirement. To the contrary, *anyone* wishing to solicit or canvass for the sale or rental of products or services on the City's sand beach areas must do so from within a booth or stall as defined by Ordinance No. 297, as amended. The classification

---

7. In fact, an inquiry into the availability of alternative channels of communication would logically appear to be a sufficient substitute for less restrictive means analysis. Additionally, if the plaintiff still has alternative channels within which to convey his message, then the means employed by the government are at least less restrictive than a total ban on the plaintiff's form of expression.

scheme of which RDI originally complained no longer exists in light of the amendment. Therefore, I find that, with respect to RDI's equal protection challenge, the City is entitled to judgment as a matter of law.

### IV. THE "OVERBREADTH" DOCTRINE.

Count II of RDI's complaint attacks Ordinance No. 297 as being overbroad. The "overbreadth" doctrine permits the invalidation of governmental regulations on First Amendment grounds, even when the litigant challenging the regulation has engaged in no constitutionally protected activity. *See, e.g., Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). However, the "overbreadth doctrine" does not apply where commercial speech is involved. *See Ohralik, supra,* 436 U.S. at 462 n. 20, 98 S.Ct. at 1922 n. 20; *Central Hudson, supra,* 447 U.S. 565 n. 8, 100 S.Ct. at 2351 n. 8. RDI appears to recognize this in that overbreadth is not discussed in its memorandum opposing the defendant's motion for summary judgment. Consequently, I find that, as a matter of law, Count II of the complaint should be, and is hereby, dismissed.

### V. CONCLUSION.

Finding no genuine dispute as to any material fact, I conclude that Ordinance No. 297, as amended by Ordinance No. 299, is a constitutional regulation of the time, place, and manner of commercial speech as applied to the plaintiff. In addition, I find that Ordinance No. 297, as amended, does not violate the equal protection clause of the Fourteenth Amendment. Consequently, the defendant is entitled to judgment as a matter of law, and the Clerk is hereby ordered to enter such judgment, with taxable costs, pursuant to Rule 58, Federal Rules of Civil Procedure.

### APPENDIX A

### ORDINANCE NO. 297 AS AMENDED BY ORDINANCE NO. 299

(New Text Underlined)

ORDINANCE OF THE CITY OF PANAMA CITY BEACH, FLORIDA, PROHIBITING COMMERCIAL SOLICITATION IN AND FROM THE SAND BEACH AREAS OF THE GULF OF MEXICO; PROVIDING EXEMPTIONS FOR CERTAIN GOODS AND SERVICES SERVING A PUBLIC NEED UPON THOSE BEACH AREAS; EXEMPTING SOLICITATION FROM BOOTHS OR STALLS; PROHIBITING COMMERCIAL SOLICITATION UPON THE PUBLIC PROPERTY OF THE CITY EXCEPT UNDER AGREEMENT WITH THE CITY; PROVIDING PENALTIES; REPEALING ORDINANCES IN CONFLICT AND ESTABLISHING AN EFFECTIVE DATE.

WHEREAS, the people of the City of Panama City Beach have found that commercial solicitation along the sand beach areas of the Gulf of Mexico within the City has become a nuisance, unreasonably interfering with the use and enjoyment of those beaches by the citizens and guests of the City, and directly and adversely affecting the major industry of the City, tourism; and

WHEREAS, the people of the City of Panama City Beach intend to promote the general welfare along the sand beach areas of the Gulf of Mexico through reasonable restrictions of commercial solicitation, canvassing and merchandising of goods and services along the sand beach areas of the Gulf of Mexico in order to insure the general welfare, promote tranquility and the high quality of life associated with beach front community living and recreation; and

WHEREAS, the people of the City of Panama City Beach have found that a certain, limited number of goods and services are so directly related to the unique quality of life and recreation on the sand beach areas of the Gulf of Mexico and that they serve a public need, enhancing the attractiveness and enjoyment of those beach areas.

NOW, THEREFORE, BE IT ENACTED BY THE PEOPLE OF THE CITY OF PANAMA CITY BEACH, FLORIDA:

Section 1. No person shall solicit or canvass for the sale or rental of merchandise, services, goods, or property of any kind or character, in, upon or from the sand beach areas between the waters of the Gulf of Mexico and the Coastal Construction Control Line established by the State of Florida, Department of Natural Resources. The words "solicit or canvass" as used herein shall include any act, delivery or exchange not initiated by the prospective customer, which directs attention to any business, mercantile or commercial establishment, or any other commercial activity, for the purpose of directly or indirectly promoting commercial interests through sales, rentals or any exchange of value.

Section 2. The prohibition contained in the preceding Section 1 shall not apply to soliciting or canvassing from within a booth or stall, for the immediate sale or rental of the following goods or services in and from such sand beach areas:

> Umbrellas Sailboats Jet Skis Cabanas Aqua Cycles Floats Chairs Parasails Sun Protective Oils & Creams

The purpose of these exemptions is to reasonably permit the solicitation and immediate sale or rental of certain goods and services which directly serve a public need in the sand beach areas and are not themselves a nuisance or detriment, without unreasonably interfering with the flow, recreation, enjoyment and privacy of persons otherwise upon the sand beach areas.

Section 3. The prohibition contained in the preceding Section 1 shall not apply to persons soliciting or canvassing from within a booth or stall, for the sale or rental of any merchandise, services, goods, or property of any kind or character to be delivered or performed off such sand beach areas. As used herein, the words "booth or stall" shall mean an immobile structure or partial enclosure not exceeding fifty (50) square feet of gross horizontal space. The purpose of requiring a booth or stall is to reasonably permit commercial speech relating to goods and services not directly serving a public need in the sand beach area, without unreasonably interfering with the flow, recreation, enjoyment and privacy of persons otherwise upon the sand beach areas.

Section 4. No person shall solicit or canvass for the sale or rental of merchandise, services, goods, or property of any kind or character in and from any lands or pier owned or leased by the City of Panama City Beach, including park and beach lands. This prohibition shall not apply to a tenant, concessionaire or licensee of the City of Panama City Beach lawfully operating within the terms of any lease, concession agreement or license granted by the City.

Section 5. Any person violating the provisions hereof shall be guilty of an offense punishable as provided by law. Each day a violation shall exist or continue shall constitute a separate offense.

Section 6. All ordinances or parts of ordinances inconsistent herewith are repealed to the extent of such conflict.

Section 7. This ordinance shall take effect as provided by law.

## CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true and correct copy of the Ordinance No. 297, adopted 23 May, 1985, as amended by Ordinance No. 299, adopted 12 December, 1985, of the City of Panama City Beach, according to the records of my office.

WITNESS my hand as City Clerk of the City of Panama City Beach and the seal of the City this 6th day of February, 1986.

CITY OF PANAMA CITY BEACH

By: /s/ William B. Turner
William B. Turner
City Clerk
(Seal)