Mark CHAD, personally and on behalf of all others similarly situated; and Angela M. Greene, individually, Plaintiffs,

v.

CITY OF FORT LAUDERDALE, FLORIDA, Defendant.

No. 93–6970–Civ.

United States District Court, S.D. Florida, Fort Lauderdale Division.

June 20, 1994.

Beverly A. Pohl, Bruce S. Rogow, Fort Lauderdale, FL, for plaintiffs.

Lindsey Payne, Asst. City Atty., Fort Lauderdale, FL, for defendant.

### ORDER ON MOTION FOR PRELIMINARY INJUNCTION

ROETTGER, Chief Judge.

**THIS CAUSE** is before the court upon plaintiffs' emergency motion for preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure to prevent Defendant City of Fort Lauderdale, Florida (hereinafter "City") from enforcing several of defendant's Rules and Regulations for City Parks and Beaches as violative of the United States Constitution. The court has jurisdiction pursuant to Title 28, United States Code, Sections 1331 and 1343(3).

Plaintiffs challenged the constitutionality of the following rules: 1) Park Rule 2.2 which prohibits businesses or social services from operating in parks without a written agreement with the City; 2) Park Rule 4.6 which bans sleeping or reclining in designated areas of the City's parks; 3) Park Rule 4.9 which forbids the storing of personal property in any park or facility except in specified storage areas; 4) Beach Rule 7.5(c) which bans soliciting, begging or panhandling; and 5) Beach Rule 7.5(d) which disallows the removal of trash and debris from waste receptacles in the absence of written permission from the Parks and Recreation Department.

Plaintiffs originally sought to enjoin the enforcement of all five of the above-named rules against him and others similarly situat-

ed, but now he seeks preliminary injunctive relief only as to Beach Rule 7.5(c) prohibiting soliciting, begging or panhandling on Fort Lauderdale's beach and its abutting sidewalk.

## FACTS

Plaintiff Chad alleges he is a 44–year–old Broward County resident who lives in public parks and on beaches day and night. He claims to have been homeless for four years. He is allegedly unemployed, disabled and indigent. He allegedly depends on others for food, shelter and other essentials. Plaintiff Chad sues the City personally and on behalf of the other estimated 5,000 homeless persons in Broward County who want to solicit contributions of money and food on Fort Lauderdale beaches. He has not been arrested for solicitation or threatened with a summons.

On July 20, 1993, Defendant City adopted several new rules and regulations for its parks and beaches "to provide citizens with a safe environment in which recreational opportunity can be maximized." *See* Rules and Regulations for City Parks and Beaches contained in Resolution 93–143. The beach regulations are set forth in Section 7. Challenged Beach Rule 7.5(c) simply provides that "[s]oliciting, begging or panhandling [on Fort Lauderdale's beach] is prohibited." It is one of several beach regulations intended "to eliminate nuisance activity on the beach and provide patrons with a pleasant environment in which to recreate." *Id.* The rules contain an enforcement provision in Section 11 which potentially subject violators to arrest and prosecution.[1]

## PRELIMINARY INJUNCTION

The court is faced with the narrow question of whether a preliminary injunction should issue to preserve the status quo until

trial on the merits. *Northeastern Florida Chapter v. Jacksonville*, 896 F.2d 1283, 1284 (11th Cir.1990). Technically, plaintiffs seeks to preserve the status quo prior to the adoption of Beach Rule 7.5(c); the testimonial evidence presented at the evidentiary hearing revealed the City has been enforcing the rule since its passage in late July.

In the Eleventh Circuit, a preliminary injunction will issue when the movant shows each of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if an injunction does not issue; (3) proof that the threatened injury to movant outweighs the potential harm caused to the nonmovant; and (4) a showing that the injunction would not disserve public interests. *Id.; Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir.1987); *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).

### A. Likelihood of Success on the Merits

Plaintiff Chad and members of the plaintiff class claim to have a First Amendment right to solicit, beg and panhandle on the City's public beach. Plaintiff Chad alleges Rule 7.5(c) violates his constitutional rights because it absolutely and unequivocally bans protected communicative conduct based on the content of the message[2]. Defendant argues in response that the acts of soliciting, begging and panhandling are "not unquestionably protected by the First Amendment."

■ Solicitation of funds is an activity that may receive First Amendment protection. *International Soc. for Krishna Consciousness, Inc. v. Lee*, —— U.S. ——, ——, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992); *United States v. Kokinda*, 497 U.S. 720, 725, 110 S.Ct. 3115, 3118–19, 111 L.Ed.2d 571 (1990); *Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298

---

1. Subsection 11.3 provides, as follows:

 Trespass
 Any person or group found in violation of the above rules and regulations shall be ordered to leave all City of Fort Lauderdale parks, beaches and recreation facilities for a minimum 24–hour period. Any person who fails to leave all facilities, parks or beach (sic) at the time requested

 may be arrested and prosecuted for trespassing or prosecuted under other existing ordinances.

2. Plaintiffs have the burden of demonstrating that the allegedly expressive conduct is protected by the First Amendment. *Clark v. Community for Creative Non-violence*, 468 U.S. 288, 293 n. 3, 104 S.Ct. 3065, 3068–69 n. 3, 82 L.Ed.2d 221 (1984).

(1981). Courts have similarly held that begging is at least a form of speech. *See Lee,* —— U.S. at ——, 112 S.Ct. at 2705 (parties agreed begging implicated First Amendment concerns); *Loper v. New York City Police Dept.,* 999 F.2d 699, 705 (2d Cir.1993); *City of Seattle v. Webster,* 115 Wash.2d 635, 802 P.2d 1333 (1990) (en banc), *cert. denied,* 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991). Neither party cited any authority distinguishing panhandling from begging. *See Blair v. Shanahan,* 775 F.Supp. 1315, 1326 (N.D.Cal.1991) (panhandler successfully challenged San Francisco ordinance banning begging in all public places).

At least one court has determined that soliciting on a Florida beach constituted commercial speech and therefore was not entitled to as much constitutional protection as ideological speech. *Resort Dev. Int'l, Inc. v. City of Panama City Beach,* 636 F.Supp. 1078, 1083 (N.D.Fla.1986). As in *Resort Dev. Int'l, Inc.,* the rule at issue does not involve a content-based regulation of speech that is political, ideological or artistic in nature [3]. *See Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 536, 100 S.Ct. 2326, 2332–33, 65 L.Ed.2d 319 (1980).

■ Assuming, without deciding, that the expressive conduct at issue is protected, the First Amendment does not guarantee access to property simply because it is owned or controlled by the government. *Lee,* —— U.S. at ——, 112 S.Ct. at 2705; *United States Postal Serv. v. Council of Greenburgh Civic Ass'n,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). Government's ability to restrict First Amendment activity depends upon the nature of the forum involved. *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3447–48, 87 L.Ed.2d 567 (1985).

■ Under this forum-based analysis, regulation of speech on government property that has traditionally been available for public expression, such as streets and parks, is subject to the highest scrutiny. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). These regulations survive only if they are narrowly drawn to achieve a compelling governmental interest. *Id.* A comparable standard applies to property that is not a traditional public forum, but which has been deliberately set aside by the government as a locale for expressive conduct. *Id.* at 45–46, 103 S.Ct. at 954–55. The government "does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius,* 473 U.S. at 802, 105 S.Ct. at 3449. Examples of designated public forums include municipal auditoriums dedicated to communicative conduct and school facilities available for use by student groups. *Id.* at 802–03, 105 S.Ct. at 3449–50. With regard to all remaining public property, the government may regulate First Amendment conduct as long as its regulations are reasonable and viewpoint neutral. *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. at 955–56.

■ Accordingly, the court must determine whether Beach Rule 7.5(c) prohibits protected expressive conduct in a public or nonpublic forum [4]. The City has explained that the rule bans begging, soliciting and panhandling on Fort Lauderdale's beach

---

3. Panama City Beach's Ordinance No. 297, stated in part:

> No person shall solicit or canvass for the sale or rental of merchandise, services, goods, or property of any kind or character, in, upon, or from the sand beach areas between the waters of the Gulf of Mexico and the Coastal Line established by the State of Florida, Department of Natural Resources.

The ordinance further defined "solicit or canvass" to mean:

> any act, delivery or exchange not initiated by the prospective customer, which directs attention to any business, mercantile or commercial establishment, or any other commercial activity, for the purpose of directly or indirectly promoting commercial interests through sales, rentals or any exchanges of value.

*See Resort Dev. Int'l, Inc. v. Panama City Beach,* 636 F.Supp. at 1084.

4. Forum analysis is very fact specific. The court notes that at this preliminary juncture neither party has supplied it with maps, diagrams, or any visual aids of the area in question. *See Searcey v. Crim,* 815 F.2d 1389, 1392–93 (11th Cir.1987) ("[d]etermining what type of public forum exists requires development of the relevant facts that bear upon the character of the property at issue").

which is bounded by Oakland Park Boulevard to the north, the Sheraton Yankee Clipper Hotel to the south and Highway A1A to the west. The rule also applies to the new sidewalk adjacent to the beach immediately east of Highway A1A. The sidewalk stretches from the south beach parking lot to Sunrise Boulevard but not northward another two miles to Oakland Park Boulevard.

Plaintiffs claim the rule impermissibly bars speech in a public forum because it spans the sidewalk abutting the beach and sidewalks constitute quintessential public forums. *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). The Supreme Court, in guaranteeing the right to picket on public sidewalks outside of its building, said:

> public places historically associated with the free exercise of expressive activities, such as streets, *sidewalks*, and parks, are considered without more, to be "public forums." In such places, the government's ability to permissibly restrict expressive conduct is very limited ...

*United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) (emphasis added) (Court concluded that the sidewalks along the outer boundaries of the Supreme Court grounds are indistinguishable from other sidewalks in Washington, D.C. and constitute a public forum). Nevertheless, not all sidewalks are public forums. *See, e.g., Greer v. Spock*, 424 U.S. 828, 835–37, 96 S.Ct. 1211, 1216–17, 47 L.Ed.2d 505 (1976) (military base sidewalk is not public forum); *Kokinda*, 497 U.S. at 727, 110 S.Ct. at 3119–20 (post office sidewalk is not public forum); *International Soc. for Krishna Consciousness, Inc. v. City of New York*, 504 F.Supp. 118, 126–29 (1980) (court upheld solicitation ban on one small sidewalk outside of the United Nations building as tenable time, place and manner restriction).

Plaintiffs also contend the Eleventh Circuit has already determined that all beaches are parks and, therefore, constitute classic public forums devoted to assembly and debate. *See Naturist Soc. Inc. v. Fillyaw*, 958 F.2d 1515, 1522 (11th Cir.1992). However, the Eleventh Circuit did not squarely hold that all beaches are public forums in *Fillyaw*; it merely determined that the John D. MacArthur Beach

State Park was a public forum. *Id.* at 1516. The Eleventh Circuit said the park was more than a beach because it contained walkways, parking lots and a nature center. *Id.* at 1522. To underscore this distinction, the Court noted that:

> [s]peech and expressive conduct in these areas may not pose the same evils as on the beach. In declaring the park a non-public forum based solely upon its beach characteristics, the district court ignored other areas of the park which are not beach.

*Id.* In *Fillyaw*, the Eleventh Circuit iterated its position that parks are classic public forums. *Id.*

■ Public property does not become a public forum simply because members of the public may come and go at will. *See Greer*, 424 U.S. at 836, 96 S.Ct. at 1216–17. The government, just as private property owners, may maintain property under its control for "the use to which it is lawfully dedicated." *Grace*, 461 U.S. at 178, 103 S.Ct. at 1707.

The Supreme Court has recently reaffirmed that a traditional public forum is one in which its principal purpose is the free exchange of ideas. *Lee*, —— U.S. at ——, 112 S.Ct. at 2706. A public forum is a place that has "immemorially been held in trust for the use of the public and, time out of mind," has been "used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* quoting *Hague v. Committee for Indus. Organ.*, 307 U.S. 496, 515–16, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939).

Given the above standard, the court concludes that plaintiffs have not established that either the sidewalk east of Highway A1A or Ft. Lauderdale's beach constitute a forum for public communication by tradition or designation. The sidewalk is new and small; it does not even extend the full length of the beach. It was created to accommodate traffic to and from the beach and, only having been built two years ago, has not been a traditional site for expressive conduct. Plaintiffs have not established the sidewalk is indistinguishable from others in Fort Lauderdale. *See Grace*, 461 U.S. at 179–80, 103

S.Ct. at 1708–09. Even if the court later determines, upon receipt of additional evidence, that the sidewalk is a public forum, it is doubtful the beach will fall into the same category. The sidewalk, contoured concrete sand barrier wall and newly constructed portals demarcate the beach as a special area subject to greater restriction. *See Lee,* — U.S. at —, 112 S.Ct. at 2706.

 The regulation of expressive activity on public property deemed not to be a public forum is subject only to a limited review—the regulation must be reasonable and not designed to prohibit the activity merely because of disagreement with the views expressed. *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. at 955–56; *Lee,* — U.S. at — – —, 112 S.Ct. at 2706–08 (airport terminals were classified as nonpublic forums and the regulation prohibiting solicitations passed after being subject only to a reasonableness review); *Kokinda,* 497 U.S. at 730, 110 S.Ct. at 3121–22 (postal service regulation prohibiting solicitation on a sidewalk leading from a parking lot to a post office submitted only to a reasonableness review). Access to a nonpublic forum may be based on topic and speaker identity as long as the distinctions drawn are viewpoint neutral and reasonable in light of the forum's purpose. *Perry Educ. Ass'n,* 460 U.S. at 49, 103 S.Ct. at 957.

Beach Rule 7.5(c) should easily pass muster under this rubric. The rule is clearly viewpoint neutral; it bans all begging, solicitation and panhandling without regard to a certain perspective. Furthermore, it is reasonable in light of the purpose the property is intended to serve. That is, one could reasonably conclude that permitting solicitation activities might disrupt unwary beach patrons. Such activities could impede the beach's use for its intended purpose which is recreational pleasure and enjoyment. The Eleventh Circuit has already noted the distinction between distributing literature and the solicitation of funds:

> [s]oliciting funds is an inherently more intrusive and complicated activity than is distributing literature. A passerby can take a pamphlet and keep walking. Soliciting funds, on the other hand, can re-

quire an extended encounter. It might be necessary to make correct change, provide a receipt, or engage in a prolonged explanation of the organization and its activities. In sum, solicitation is more time consuming and is likely to cause greater confusion and disruption.

*United States v. Belsky,* 799 F.2d 1485, 1489 (11th Cir.1986); *see also Heffron,* 452 U.S. at 665, 101 S.Ct. at 2572. The City is legitimately concerned about maintaining a safe beach and minimizing nuisances in its so-called "tourist zone." Lastly, the City has a legitimate interest in maintaining the aesthetics of the beach—its primary tourist attraction—and in keeping the walkway bordering it unobstructed. *See United States v. Gilbert,* 920 F.2d 878, 886 n. 8 (11th Cir.1991) (government may legitimately exercise its police powers to advance aesthetic values); *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 805, 104 S.Ct. 2118, 2128–29, 80 L.Ed.2d 772 (1984). *Harnish v. Manatee County,* 783 F.2d 1535, 1539 (11th Cir.1986) ("Aesthetics is a substantial governmental goal which is entitled to and should be accorded weighty respect"). The court notes that, in order to be upheld, the regulation need not be "the most reasonable or the only reasonable limitation." *Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452; *Belsky,* 799 F.2d at 1489.

 However, even if Ft. Lauderdale beach is ultimately deemed to be a park and, consequently, a public forum, the court finds the City's regulation appears to be a reasonable time, place and manner restriction. The Supreme Court has held that:

> [i]n ... quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.... The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. at 955. The constitutionality of a time, place and manner restriction turns on whether: 1) the regulation is content neutral; 2) the regulation is narrowly tailored to serve a significant governmental interest; 3) the regulation leaves open ample alternative channels for communication. *Id.; Heffron,* 452 U.S. at 648–50, 101 S.Ct. at 2564–65; *Clark v. Community for Creative Non-violence,* 468 U.S. 288, 294, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). In addition, consideration of a forum's special attributes is relevant to the constitutional inquiry as the "significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved." *Heffron,* 452 U.S. at 650–51, 101 S.Ct. at 2565–66; *Perry Educ. Ass'n,* 460 U.S. at 44, 103 S.Ct. at 954.

█ The main inquiry in determining content neutrality is whether the government is regulating speech because of disagreement with its message. *Clark,* 468 U.S. at 295, 104 S.Ct. at 3069–70. The governmental aim is the controlling consideration. *Id.* Government's regulation of expressive conduct is content neutral if it is "justified without reference to the content of the regulated speech." *Id.* at 293, 104 S.Ct. at 3069.

Beach Rule 7.5(c) is content neutral; it applies evenhandedly to persons aspiring to solicit, beg or panhandle along the City's beach and adjacent sidewalk regardless of their agenda. The principal justification behind the rule is to maintain safety on the beach and to preserve it for recreational activity. This justification is content neutral. Furthermore, like the federal postal regulation upheld in *Belsky* and *Kokinda,* the rule does not appear to prohibit the distribution of literature or the exercise of free speech rights in the absence of an immediate financial solicitation. *See Belsky,* 799 F.2d at 1487.

Second, the City's interest in promulgating the Beach Rule 7.5(c) is significant. As previously set forth, the City has a legitimate interest in eliminating nuisance activity on its famous beach and providing citizens and patrons with a safe, aesthetic, pleasant environment in which recreational opportunity can be maximized. *See* Resolution 93–143; *See also Resort Dev. Int'l, Inc.,* 636 F.Supp. at 1083 (city had significant interest in "protecting its beaches from nuisances and in prohibiting unreasonable interferences with the flow, recreation, enjoyment, and privacy of persons ... on the sand beach areas"); *Clark,* 468 U.S. at 296–97, 104 S.Ct. at 3070–71 (government has substantial interest in maintaining Washington D.C. parks in an "attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence.")

█ Maintaining a safe beach or "tourist zone" is of paramount concern to the financial future and growth of the City. Fort Lauderdale's beach is unique; no development is permitted East of A1A. Fort Lauderdale's beach, unlike most Florida beaches, is not barricaded by rows of houses, hotels and condominiums. The ocean view is preserved for all passersby. The beach is maintained for tourists and residents alike. As discussed above, the beach is the City's chief asset. The beach's rehabilitation and redevelopment as a resort destination plays an integral part in the City's economic development plans. Protecting the safety, peace, comfort and convenience of persons using public property is a valid governmental goal. *Heffron,* 452 U.S. at 650, 101 S.Ct. at 2565; *Cantwell v. Connecticut,* 310 U.S. 296, 306–07, 60 S.Ct. 900, 904–05, 84 L.Ed. 1213 (1940). A rule is narrowly tailored as long as it promotes a significant governmental interest that would be less effectively accomplished without it. *Clark,* 468 U.S. at 297, 104 S.Ct. at 3071. Considering the justifications tendered by the City, the rule appears to further its legitimate governmental interests which would be less well served otherwise.

Finally, Beach Rule 7.5(c) leaves open ample alternative channels for communication as it applies only to the beach area, not to all City recreational property or parks, and affects a mere fraction of the City's public sidewalks. *See, e.g., Loper,* 999 F.2d at 705 (striking down an ordinance banning begging on all of the sidewalks in New York City); *Blair,* 775 F.Supp. at 1326 (striking down

San Francisco ordinance prohibiting begging in all public places).

 In light of the fact that Beach Rule 7.5(c) is a content-neutral time, place and manner restriction on expressive conduct justified by the City's concern in eliminating nuisances to maintain a safe tourist zone in only a minuscule section of the City, the court finds plaintiffs are unlikely to succeed on the merits. The First Amendment does not guarantee the right to beg, panhandle or solicit whenever, however and wherever one pleases. *Heffron,* 452 U.S. at 647, 101 S.Ct. at 2563–64.

### B. Likelihood of Irreparable Harm

Plaintiff Chad has adequately established that he and his class, if certified, may sustain irreparable injury unless defendant is enjoined from enforcing Beach Rule 7.5(c). An injury is irreparable if it cannot be undone through monetary remedies. *Spiegel v. Houston,* 636 F.2d 997 (5th Cir.1981). The Supreme Court has said that any loss of First Amendment freedoms—even for minimal periods of time—can constitute irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). The Eleventh Circuit has likewise held that on-going violations of the First Amendment constitute irreparable injury because chilled free speech, due to its intangible nature, cannot be redressed through monetary damages. *Cheffer v. McGregor,* 6 F.3d 705 (11th Cir. 1993); *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir.1983).

In this case plaintiffs risk arrest for what might later be deemed wholly innocent conduct. The harm caused by the restraint placed upon plaintiffs' First Amendment freedoms cannot be remedied by an award of monetary damages. Therefore, irreparable injury must be assumed.

### C. Balance Between Harm to Plaintiffs and to Defendant

In its analysis on plaintiffs' likelihood of success on the merits, the court has already found that the City's interest in maintaining a safe "tourist zone" outweighs plaintiffs' interest in soliciting, begging or panhandling on its beach. The City's need to mediate competing uses for public property is unavoidable. Ft. Lauderdale beach is a unique resource the City must keep in trust for the vast numbers of its visitors and patrons. *Clark,* 468 U.S. at 290, 104 S.Ct. at 3067.

### D. Balancing of Public Interest

The Court finds that the public interest will not be disserved by denial of a preliminary injunction in this case. It is in the public interest to maintain the safety of Ft. Lauderdale's beach and the court has determined that defendant's Beach Rule 7.5(c) does not appear to violate fundamental rights.

Since plaintiffs have not carried the burden of persuasion with regard to all four prerequisites for the issuance of a preliminary injunction in accordance with *Canal Auth.,* 489 F.2d at 572, it is

**ORDERED AND ADJUDGED** that plaintiffs' motion for preliminary injunction is **DENIED.**

**DONE AND ORDERED.**