**WILD WILD WEST GAMBLING HALL AND BREWERY, INC. Plaintiff,**

v.

**CITY OF CRIPPLE CREEK, COLORADO; Edward Stauffer, Individually and in his official capacity as Chief of Police of the Cripple Creek Police Department; Beth Caddy, Individually and in her official capacity as Code Enforcement Officer for Cripple Creek; and Douglas Houston, Individually and in his official capacity as Lieutenant of the Cripple Creek Police Department, Defendants.**

Civ. A. No. 94–B–729.

United States District Court, D. Colorado.

May 26, 1994.

Thomas J. Kimmell, Burk & Kimmell, Englewood, CO, for plaintiff.

Charles T. Houghton, Colorado Springs, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff Wild Wild West Gambling Hall & Brewery, Inc. (Wild West) seeks declaratory and injunctive relief pursuant to 28 U.S.C. section 2201 et seq as to the constitutionality of the defendant City of Cripple Creek's (City) ordinance section 7–16 titled "Solicitation Regulation." Also named as defendants are Edward Stauffer, the Chief of Police of the Cripple Creek Police Department, Beth Caddy, Code Enforcement Officer, and Douglas Houston, Lieutenant of the Cripple Creek Police Department. Having considered affidavits and briefs submitted by the parties in addition to evidence taken at the preliminary injunction hearing on May 12, 1994, I enter this judgment declaring ordinance section 7–16 unconstitutional in violation of the First Amendment to the United States Constitution.

## I. FINDINGS OF FACT

In November, 1990, the voters of Colorado passed an amendment to the Colorado Constitution allowing limited stakes gaming in three Colorado communities including the town of Cripple Creek. Cripple Creek, a popular tourist site, presently contains twenty-five gaming establishments including Wild West. All but one are located on a 4 block stretch of Bennett Avenue, Cripple Creek's main street. Bennett Avenue also contains other businesses, City Hall, and the Teller County Courthouse.

The advent of gaming in Cripple Creek has resulted in an additional 8,000–10,000 people visiting Cripple Creek during peak tourist days. At times the town's streets and sidewalks become quite congested. In July, 1991, Cripple Creek enacted Ordinance No. 1991–19 which included section 7–16 entitled "Solicitation Regulation." In relevant part it, it provides:

No person shall personally solicit customers or distribute or display literature, coupons, signs, posters, coins, tokens, or other advertising products or services in or on the public right-of-way, consisting of streets and sidewalks used by the public, nor shall any person attempt by the use of any such displays or products to personally, physically, or orally coax persons on the public right-of-way into a private place of business.

In an effort to promote its business, Wild West sought to inform passersby of its unique characteristics which distinguish Wild West from the other casinos in town. These features include an on-site brewery and, more importantly, according to Wild West, the "loosest slots in town." One method by which Wild West seeks to advertise the "loose slots" and the brewery is to have an employee stationed outside the casino's front door. This employee, sometimes dressed in western period attire, greets passersby, opens the casino door and invites them in while telling them about the brewery and the "loose" slot machines. The "greeter" also offers the potential customer a free $1 token, a free beverage coupon, or both. As part of this effort to create goodwill, the "greeter" also at times gives passersby information about Cripple Creek's lodging, restaurants, and attractions.

In the past year, the Cripple Creek police have issued to the Wild West "greeters" multiple summons and complaints for alleged violations of section 7–16. As a rule, the police would write the summons and complaints when the casino "greeter" or the passerby was seen standing on any portion of the public sidewalk during the solicitation. There exists no "safe zone" or "safe time" to allow personal solicitation of or coupon distribution to potential customers on the public sidewalks, streets, or other public areas of Cripple Creek.

During the preliminary injunction hearing, the parties agreed to and I ordered consolidation for trial on the merits of plaintiff's motion for preliminary injunction and claim for declaratory judgment and injunctive relief.

## II. LAW

Freedom of speech, is guaranteed by the First Amendment to the United

States Constitution and is protected from invasion by state action by the Fourteenth Amendment. *Lovell v. City of Griffin*, 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938). Municipal ordinances adopted under state authority constitute such state action and are within the prohibition of the First Amendment. *Lovell, Id.*

For the first two hundred years of our nation's history, courts did not recognize protection of commercial speech. *See Valentine v. Chrestensen*, 316 U.S. 52, 54, 62 S.Ct. 920, 921, 86 L.Ed. 1262 (1942). In 1976, the Supreme Court extended First Amendment protection to commercial speech in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825–26, 48 L.Ed.2d 346 (1976) but it recognized a lesser measure of protection than was afforded other constitutionally guaranteed forms of expression. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457, 98 S.Ct. 1912, 1919, 56 L.Ed.2d 444 (1978). In extending First Amendment protection to commercial speech, the courts long ago rejected the "highly paternalistic" view that government can or should suppress commercial speech. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 562, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980). Rather, "people will perceive their own best interests if only they are well enough informed, and ... the best means to that end is to open the channels of communication, rather than to close them." *Virginia State Bd. of Pharmacy*, 425 U.S. at 770, 96 S.Ct. at 1829. Regulation that serves only to restrict the information that flows to consumers fosters "the assum[ption] that the public is not sophisticated enough to realize the limitations of advertising, and that the public is better kept in ignorance than trusted with correct but incomplete information." *Bates v. State Bar of Arizona*, 433 U.S. 350, 374–375, 97 S.Ct. 2691, 2704, 53 L.Ed.2d 810 (1977).

■ After granting commercial speech limited First Amendment protection, the Supreme Court then set out in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) the following four-part analysis to determine the constitutional contours of restrictions on commercial speech:

(1) does the commercial speech involved concern lawful activity which is not misleading; and

(2) is the asserted governmental interest in regulating such speech substantial; if so,

(3) does the regulation directly advance the governmental interest asserted; and

(4) is the regulation more extensive than necessary to serve the governmental interest.

See, *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 475, 109 S.Ct. 3028, 3032, 106 L.Ed.2d 388 (1989).

■ The party who seeks to restrict expression bears the burden of demonstrating a substantial governmental interest, as well as justifying the scope of any restrictions advancing the interest. *See Fox*, 492 U.S. at 480, 109 S.Ct. at 3034–35; *Zauderer v. Office of Disciplinary Counsel of S.Ct. of Ohio*, 471 U.S. 626, 647, 105 S.Ct. 2265, 2279–80, 85 L.Ed.2d 652 (1985). Accordingly, the burden here rests with the defendants.

### III. CENTRAL HUDSON GAS ANALYSIS

There is no dispute that the speech at issue in this case is commercial in nature. *Fox*, 492 U.S. at 473–474, 109 S.Ct. at 3031 (commercial speech is expression that "propose[s] a commercial transaction"). Therefore, I apply the *Central Hudson Gas* test in deciding the constitutionality of ordinance section 7–16.

■ Under the first prong of the *Central Hudson* analysis, I must determine whether the speech is false, misleading, deceptive, or advertises or promotes unlawful conduct. It is clear in this case that no unlawful activity is involved. Defendants contend, however, that the challenged speech is not entitled to any First Amendment protection because the statements are misleading. Specifically, defendants argue that Wild West is misleading the public by stating that it has "loose" or the "loosest" slot machines. I disagree.

Unrebutted testimony established that the term "loose" refers to the rate at which any gaming machine pays off and that the "looser" the machine, the higher the payoff rate. The "looseness" of a slot machine is determined by an electronic game chip inserted into the machine. The highest payoff rate of any game chip which has been approved by the Colorado Gaming Commission, the Colorado state agency charged with regulating and overseeing the gambling industry, is 97.454%. In real terms this means that for every $1,000,000 put into a slot machine equipped with such a game chip, the machine returns $975,454 in winnings.

Wild West has placed signs on each machine in its casino which contains 97.454% game chips. These signs, approved by the Colorado Gaming Commission, state that the machine contains a 97.454% game chip and that this was the highest game chip approved by the Colorado Gaming Commission. Moreover, the owner-manager of Wild West testified that the casino had been voted by its peers as the "loosest" in Cripple Creek for two years running.

Defendant argues that because the Colorado gaming statute allows a gaming device to be set at a 100% payoff rate, it is misleading or deceptive for Wild West to claim that it has the "loosest" machines. I am not persuaded. It strains any notion of common sense or human nature to think that any casino customer expects casino machines to pay off at a rate of 100%. I find nothing deceptive or misleading about Wild West's statements.

■ The second inquiry under *Central Hudson Gas* is whether the governmental interest served by this ordinance is substantial. The stated purposes of section 7 include "protect[ion] [of the public] against the visual discord resulting from the unrestricted proliferation of [s]igns and similar devices; ... the necessity of limiting or controlling audio advertising or noise from businesses on the streets and sidewalks; and ... [to] recognize the desire and need of persons to freely travel upon the streets and sidewalks without interruption." There is no real dispute between the parties, and I agree, that these civic interests are substantial. *See Grayned*

*v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972) (state's interest in protecting "safety and convenience" of persons using public forum is valid governmental objective); *Schneider v. New Jersey,* 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939).

■ As to the third prong of the *Central Hudson Gas* test, it is clear that the ordinance in question directly advances the governmental interests involved. It is hard to imagine a more direct link between the prohibition of all sign advertising, personal solicitation, distribution of coupons and tokens on the town's streets and sidewalks and the desired effects on the proffered governmental interests. Therefore, I conclude that ordinance section 7–16 directly advances the governmental interests.

■ It is the application of *Central Hudson Gas's* final prong that renders this ordinance constitutionally infirm. I conclude that the regulation is more extensive than necessary to serve the governmental interests.

■ In *Board of Trustees of the State Univ. of N.Y. v. Fox,* 492 U.S. 469, 477, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989), the Court held that the meaning of "necessary" in the context of a commercial speech case requires "something short of a least-restrictive-means standard." What is required is a "fit between the legislature's ends and the means chosen to accomplish those ends." *Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 341, 106 S.Ct. 2968, 2977, 92 L.Ed.2d 266 (1986). This "fit" does not have to be perfect, but should be reasonable. *Fox,* 492 U.S. at 480, 109 S.Ct. at 3034–35; *National Advertising Co. v. City and County of Denver,* 912 F.2d 405 (10th Cir.1990). A "reasonable fit" is one in which the "means [are] narrowly tailored to achieve the desired objective." Also, the scope of the restriction on speech should be "in proportion to the interest served," *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982) and "the cost [of the restriction must] be carefully calculated." *Fox,* 492 U.S. at 480, 109 S.Ct. at 3035. Finally, in deciding whether

there is a "reasonable fit" between the means and the end, I consider what alternatives are available. *See Edenfield v. Fane,* 507 U.S. ——, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

Under these standards, the Cripple Creek ordinance cannot be viewed as either "narrowly tailored" or achieving a "reasonable fit". Instead, this ordinance bans all methods of expression of commercial speech at all times on all public sidewalks and streets of Cripple Creek. In addition, there is no provision for any alternative means to express commercial speech on Cripple Creek's public streets and sidewalks.

Defendants rely on *Resort Dev. Int'l, Inc. v. City of Panama City Beach,* 636 F.Supp. 1078 (N.D.Fla.1986) in which an ordinance limiting commercial speech was upheld. However, the ordinance in *Resort* is readily distinguishable from ordinance section 7–16. In *Resort,* while personal solicitation was banned from the public beach, it was allowed on the public streets and sidewalks. The ordinance further allowed a booth or stall on the public beach which an employee could leave to cultivate customers who demonstrated further interest. Also, *Resort's* ordinance allowed signs and other devices on public property to attract potential customers on the beach.

In contrast, section 7–16 provides no safe zone, safe time, or safe method for the exercise of commercial speech on Cripple Creek's public sidewalks, streets, or other public areas. Such a broad proscription on commercial speech is neither narrowly tailored nor a reasonable fit between governmental ends and means. Thus, ordinance section 7–16 is more extensive than necessary to promote Cripple Creek's legitimate governmental interests.

THEREFORE, IT IS ORDERED THAT:

1. there being no just reason for delay, pursuant to F.R.C.P. 54(b), Judgment enter in favor of plaintiff declaring that section 7–16 of the City of Cripple Creek ordinances is unconstitutional in violation of the right to free speech guaranteed by the First Amendment to the United States Constitution;

2. the defendants, their agents and employees are PERMANENTLY ENJOINED from enforcing ordinance section 7–16;

3. a further status/scheduling conference shall be held before the court on June 9, 1994 at 9:00 a.m.